```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
LOUIS DREYFUS CORPORATION,                    07 CV 6622 (WHP)

                           Plaintiff,

        -against-

M/V CMA CGM CORTES, her engines,
boilers, tackle, etc., ALPHA
SHIPMANAGEMENT GMBH & CO., KG, ALPHA
SHIP GMBH & CO. KG MS "NEPTUN",
COMPANIA SUD AMERICANA DE VAPORES S.A.
(C.S.A.V.),

                           Defendants.
------------------------------------X
```

MEMORANDUM OF LAW
IN SUPPORT OF MOTION


Garth S. Wolfson (GW 7700)

   Of Counsel



MAHONEY & KEANE, LLP
Attorneys for Defendant
COMPANIA SUD AMERICANA DE VAPORES S.A.
111 Broadway, Tenth Floor
New York, New York 10006
(212) 385-1422

## TABLE OF CONTENTS

*Page*

STATEMENT OF FACTS..................................................1

ARGUMENT............................................................1

    POINT I.    PLAINTIFF'S CLAIM SHOULD BE DISMISSED ON
                   FORUM NON CONVENIENS GROUNDS................1

    CONCLUSION..........................................8

## STATEMENT OF FACTS

For an accurate statement of the pertinent facts established in this matter, the Court is respectfully referred to the Declaration of Garth S. Wolfson executed on April 11, 2008.

## ARGUMENT

**POINT I.  PLAINTIFF'S CLAIM SHOULD BE DISMISSED ON FORUM NON CONVENIENS GROUNDS.**

"The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or in the interest of justice, transfer such case to any district or division in which it could have been brought," 28 U.S.C. § 1406(a), and "it is in the field of admiralty that our federal courts have applied the doctrine of *forum non conveniens* most flexibly and over the longest period of time." Alcoa S.S. Co. v. M/V Nordic Regent, 654 F.2d 147, 153 (2d Cir.), cert. denied, 449 U.S. 890, 101 S. Ct. 248, 66 L. Ed. 2d 116 (1980).

> The factors the court must weigh have been delineated in case after case: "(1) convenience of the parties; (2) convenience of fact witnesses; (3) availability of process to compel reluctant witnesses; (4) the cost of obtaining the presence of witnesses; (5) access to proof; (6) calendar congestion; (7) where the relevant events took place; and (8) the interest of justice in general."

Cargill Inc. v. M/V Paschalis, No. 86 Civ. 0805 (SWK), 1987 U.S. Dist. LEXIS 8888, 1988 A.M.C. 1016, 1024 (S.D.N.Y. Sep. 30, 1987) (quoting Car-Freshner Corp. v. Auto Aid Mfg. Corp., 265 F. Supp.

82, 85 (N.D.N.Y. 1977); see also, Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508-09 (1947); Heera Indust., Ltd. v. AIU Ins. Co., No. 97 Civ. 1144 (HB), 97 U.S. Dist. LEXIS 12578, 1998 A.M.C. 1, 3 (S.D.N.Y. Aug. 22, 1997) ("Virtually all persons relevant to this litigation reside in Japan, where their depositions may be more easily taken and their presence at trial more readily procured."); Extractora de Productos Vegetale y Animales S.A. v. M/V Sonia M, No. 90 Civ. 3007 (KTD), 1991 A.M.C 2953, 2955 (S.D.N.Y. Jan. 9, 1991) ("In this case, it is clear there are no local interests involved as to the parties, the ship, or the cargo.").

The deference otherwise afforded plaintiff's choice of forum is diminished where no meaningful nexus between the operative facts and plaintiff's chosen forum can be shown. See, Transmundo Co. v. S.S. Delta Mar, No. 83 Civ. 2801, 1983 A.M.C. 2572 (S.D.N.Y. Jun. 28, 1983) ("Although a plaintiff's choice of [its home] forum ordinarily is entitled to significant weight, the deference accorded that factor is lessened where the operative facts in the case have no material connection with the district in which plaintiff filed the complaint."); accord, Carta Cartoni Cellulosa, S.P.A. v. M.V. Costa Atlantica, No. 84 Civ. 8673 (JFK), 1987 A.M.C 2659, 2661-62 (S.D.N.Y. Mar. 14, 1986); see also, M/V Paschalis, 1988 A.M.C. at 1024-25.

And, if third parties are alleged to have caused the cargo damage, these public and private factors will weigh especially heavily in favor of transfer or dismissal in favor of the

2

jurisdiction where the damage is alleged to have occurred, where venue is laid in a forum lacking personal jurisdiction over the potential indemnitors. See, Wm. H. McGee & Co. v. United Arab Shipping Co., 6. F. Supp. 2d 283, 1998 A.M.C. 106, 115 (D.N.J. 1997) ("Transfer to the Eastern District of Louisiana, the forum with the most significant nexus, will enhance the convenience of the majority of the witnesses and parties. TCI Trucking, moreover, is apparently subject to jurisdiction in Louisiana, but has no contacts with New Jersey."); United Arab Republic of Egypt v. M/V Robert E. Lee, No. 96 Civ. 7170 (LBS), 97 U.S. Dist. LEXIS 10330, 1997 A.M.C. 2922 (S.D.N.Y. Jul. 17, 1997) ("Given that the parties apparently agree that at least some of the damage occurred during loading at New Orleans, it is clear that witnesses will potentially play a significant role in the litigation."); Sprague & Rhodes Commodity Corp. v. S.S. Maersk Mango, No. 80 Civ. 4789 (WCC), 1981 A.M.C. 1876, 1879 (S.D.N.Y. Mar. 18, 1981) ("In view of the reasonable likelihood that Moller will proceed against certain New Orleans stevedores and warehousers, that goal can only be accomplished by transfer of this action to the New Orleans forum."); Willis Mach. and Toll Co. v. S.S. American Legend, No. 79 Civ. 5378 (WCC), 1981 A.M.C. 1212, 1215 (S.D.N.Y. Jul. 21, 1980) ("[D]efendants have at least colorable claims over against both the barge and tug operators and the stevedoring company, both of which are located in Norfolk and are amenable to service or process there. Under these circumstances, plaintiff's choice of

forum alone is not sufficient to outweigh the other factors suggesting transfer."); Thyssen, Inc. v. S.S. Dunav, No. 80 Civ. 2334 (JMC), 1981 A.M.C. 1240, 1245 (S.D.N.Y. Oct. 24, 1980) ("If [the party opposing the transfer motion] fails to establish that Atlantic has sufficient jurisdictional contacts . . . the action will be transferred to the Eastern District of Michigan since the Court concludes that Atlantic is an indispensable party to this action and that transfer would be in the interests of justice."); Biggers v. Borden, Inc., 475 F. Supp. 333, 1979 A.M.C. 2835, 2839 (E.D. Pa. 1979) ("Ability to implead a third party defendant is an important consideration favoring transfer of an action."); Marvirazon Compania Naviera S.A. v. H.J. Baker & Bro., Inc., No. 77 Civ. 5755 (RLC), 1979 A.M.C. 625, 634 (S.D.N.Y. Oct. 18, 1978) ("Since the surveyors have eyewitness reports to give as well as opinion testimony, their convenience should be considered. Their residence in Louisiana cuts strongly in favor of transfer.").

In addition, the United States Carriage of Goods by Sea Act is applicable only to "shipments to and from the United States," 46 U.S.C. § 1300; Ampac Trading Co. v. M/V Ming Summer, 566 F. Supp. 104, 1984 A.M.C. 352, 352-53 (W.D. Wash. 1983), and, even then, only to the ocean leg of the shipment. See, Sompo Japan Ins. Co. of Am. v. Union Pacific R.R. Co., 456 F.3d 54, 2006 A.M.C. 1817 (2d Cir. 2006). Otherwise, "[i]n actions against the carrier for negligent stowage or care of the goods during transit, conflict of laws principles would lead to the law of the

jurisdiction in which the bill was issued." Gilmore & Black, <u>The Law of Admiralty</u>, § 3-19 (2d ed., Foundation 1975).

But, even under United States law, where an armed hijacking is alleged, a plaintiff can not simply show that the loss occurred while the goods were in the custody of the carrier, and must prove some negligence to overcome a due diligence defense. <u>See</u>, <u>Anvil Knitwear, Inc. v. Crowley Am. Transp., Inc.</u>, 00 Civ. 3243 (NRB), 2001 U.S. Dist. LEXIS 10684 (S.D.N.Y. Jul. 27, 2001) ("Anvil has not alleged, let alone proffered evidence to support, any theory of how Crowley or its agents acted negligently in connection with the hijacking. Although the ultimate burden is on Crowley to prove due diligence, after eight months of discovery and the trucker's stipulated innocence, Anvil must be able to allege, in some specific manner, how Crowley was negligent."); <u>Fruit of the Loom v. Arawak Caribbean Line Ltd.</u>, 126 F. Supp. 2d 1337, 1345 (S.D. Fla. 1998) ("In the absence of any other evidence, no finder of fact could come to the conclusion that it is 'more likely than not' that one of the carrier's employees participated in the crimes."); <u>Minemet, Inc. v. M.V. Mormacdraco</u>, 536 F. Supp. 769, 771-75 (S.D.N.Y.) (Weinfeld, J.) ("Mormac may meet its burden of production by showing that the theft was not the result of its negligence . . . . Apart from lack of proof of negligence, a fact that will not down is that armed robbery and kidnapping of the pier guard, the type here perpetrated, was not a foreseeable act."), <u>aff'd</u>, 714

F.2d 115 (2d Cir. 1982). Such cases thus invariably center on the evidence underlying the hijacking; arguments concerning the foreseeability of the attack and the security procedures applied can almost certainly be anticipated.

The shipment in the case at bar was meant to be foreign-to-foreign, with no connection to New York.[1] (Complaint, Exhibit A;

---

[1] The service contract between plaintiff and CSAV contains a New York arbitration clause. (Verified Responses to Demands, Exhibit D to Wolfson Declaration). But, unlike bills of lading, service agreements concern separate and distinct obligations, regarding rates, commodities, service commitments and other purely commercial matters. They do not cover alleged cargo damage under individual contracts of carriage.

Under United States law, COGSA states that "[t]he provisions of this Act shall not apply to charter parties." 46 U.S.C. § 1305. It says no such thing about service contracts. In the absence of a charter party, the bill of lading is the governing contract under COGSA, and the parties to a shipment are bound by the bill of lading's provisions. See, Southern Pacific Transp. Co. v. Commercial Metals, 456 U.S. 336, 342-43 (1982) ("[E]ach [term] has in effect the force of statute of which all effected must take notice."); United Van Lines Inc. v. Hellman, 949 F. Supp. 126, 129 (E.D.N.Y. 1996) ("It is well-accepted that a bill of lading may not be modified by extrinsic or parol evidence.").

Accordingly, several decisions have found that a bill of lading's provisions supersede a service contract's. See, Calchem Corp. v. Activsea USA LLC, No. 06 Civ. 1585 (CPS), 2007 U.S. Dist. LEXIS 53904, *13, 2007 A.M.C. 1950 (E.D.N.Y. Jul. 25, 2007) ("[B]ecause the bill of lading was issued after the service contract, the bill of lading controls."); TMC Co., Ltd. v. M/V Mosel Bridge, 01 Civ. 7860 (LAK), 2002 U.S. Dist. LEXIS 14451 (LAK) (S.D.N.Y. Aug. 7, 2002) ("[T]he forum selection clause in the way bill, which postdated and is flatly inconsistent with that in the service contract, would have superseded the latter with respect to the cargo at issue.").

> By their terms, the service contracts govern only claims for breach of their pricing and shipping provisions. The service contracts do not extend to claims for cargo damage, nor do they modify the

6

Unsigned Bill of Lading, Exhibit D to Wolfson Declaration). But, more importantly, the hijacking took place before loading, where all of the pertinent witnesses and evidence would be located, and where CSAV would have a claim for indemnification over against a trucker not subject to the personal jurisdiction of the United States courts. (Translations of Police Reports, Claim Notice, Tagliareni Declaration, Exhibit D to Wolfson Declaration). The documentary evidence which the Court allowed plaintiff to gather, as well as the Answers to Interrogatories and Declaration submitted under oath on behalf of CSAV, establish that the central facts, witnesses, and evidence, as well as indemnitors, are located in Guatemala and bear no relation at all to this District. The bill of lading was issued in Guatemala, and the COGSA statute would only cover the tackle-to-tackle period for United States shipments, so the applicable law is likely Guatemalan, too. This is a textbook situation crying out for application of the forum

---

terms and conditions set forth in the Bills of Lading. The Bills of Lading are the applicable contracts of carriage governing liability for cargo damage, and the service contracts' provisions for New York jurisdiction are therefore inapplicable to the present case.

Regal-Beloit Corp. v. Kawasaki Kisen Kaisha, Ltd., 462 F. Supp. 2d 1098, 1105 (C.D. Cal. 2006).

Nonetheless, to the extent the Court is inclined to apply the arbitration provision to this dispute, CSAV would ask, in the alternative, for a dismissal or stay pending arbitration. See 9 U.S.C. § 3.

non conveniens doctrine.[2]

**CONCLUSION.**

WHEREFORE, CSAV urges the Court to grant the instant motion for an order, pursuant to Rule 12 of the Federal Rules of Civil Procedure, dismissing the action on forum non conveniens grounds and granting to CSAV such other and further relief as this Honorable Court may deem just and proper.

Dated:   New York, New York
         April 11, 2008

>                                Respectfully submitted,
>
>                                MAHONEY & KEANE, LLP
>                                Attorneys for Defendant
>                                COMPANIA SUD AMERICANA DE
>                                VAPORES S.A.
>
>                           By: _____
>                                Garth S. Wolfson (GW 7700)
>                                111 Broadway, Tenth Floor
>                                New York, New York 10006
>                                (212) 385-1422

---

[2] Indeed, even the Court's subject matter jurisdiction is questionable in this case, since the Complaint seeks only $50,000, less than the threshold amount required to sustain diversity jurisdiction. (Complaint, Exhibit A to Wolfson Declaration). In Norfolk S. Ry. Co. v. Kirby, 125 S. Ct. 385, 160 L. Ed. 2d 283, 2004 A.M.C. 2705 (2004), the Supreme Court adopted a "conceptual," rather than a "spatial" approach for exercising admiralty jurisdiction, but still held that geography "is useful in a conceptual inquiry." Kirby, 2004 A.M.C. at 2713. "If a bill's sea components are insubstantial, then the bill is not a maritime contract." Id. Here, the sea components were never even performed at all.