567-07/MEU

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------x

LOUIS DREYFUS CORPORATION,                          **07 CV 6622 (WHP)**

Plaintiff,


- against -


M/V CMA CGM CORTES, her engines,
Boilers, tackle, etc., ALPHA SHIP MANAGEMENT
GMBH & Co., KG, ALPHA SHIP GMBH & CO,
KG MS'NEPTUN', COMPANIA SUD AMERICANA
DE VAPORES S.A. (C.S.A.V.)

Defendants.

--------------------------------------------------------------------x


## MEMORANDUM OF LAW IN SUPPORT OF DEFNDANT'S MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT


FREEHILL HOGAN & MAHAR, LLP
Attorneys for Defendant
ALPHA SHIP GMBH & CO KG MS'NEPTUN'
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax
Michael E. Unger (MU 0045)


NYDOCS1/302617.1

## TABLE OF CONTENTS

TABLE OF AUTHORITIES                                                              ii

PRELIMINARY STATEMENT                                                             2

FACTS                                                                            3

LEGAL ARGUMENT

      POINT I

      ALPHA CANNOT BE LIABLE IN CONTRACT
      FOR THE NON-DELIVERED CONTAINER                                             4

      A.    No Contract Existed Between Plaintiff and ALPHA                          4

      B.    ALPHA Is Not Bound By The CSAV Bill of Lading                            6

           (i)    The CSAV bill of lading was not issued and
                   is therefore unenforceable                                              6

           (ii)   ALPHA Was Not A "Carrier" Under The CSAV
                   Bill of Lading And Therefore Cannot Be Liable
                   For Non-delivery                                                        7

           (iii)  Even If ALPHA Was a Carrier Under the CSAV Bill
                   of Lading, Plaintiff Failed to Make a *Prima Facie*
                   Case Under COGSA or the Hague Rules                                    11

      POINT II

      DEFENDANT ALPHA IS NOT LIABLE IN TORT                                      12

      POINT III

      THE FEDERAL DISTRICT COURT IN THE
      SOUTHERN DISTRICT OF NEW YORK IS
      *FORUM NON CONVENIENS*                                                     13

CONCLUSION                                                                       14

## **TABLE OF AUTHORITIES**

**Cases**

Bally, Inc. v. M.V. Zim America, 22 F.3d 65 (2d Cir. 1994) ........................................ 11

Commercial Metals Co. v. M/V LUCKYMAN, 1993 U.S. Dist. LEXIS 17484

    (E.D. Pa. 1993).................................................................................................... 7, 9

Commercial Molasses Corp. v. New York Tank Barge Corp., 314 U.S. 104, 86 L. Ed. 89, 62 S. Ct.

    156 (1941)............................................................................................................ 12

Eastern Fish Company v. South Pacific Shipping Co., Ltd., 105 F. Supp. 2d 234

    (S.D.N.Y. 2000) .................................................................................................... 6

Hyundai Corp., U.S.A. v. Hull Ins. Proceeds of The M/V Vulca, 800 F. Supp. 124

    (D. NJ 1992)......................................................................................................... 9

Indemnity Insurance Co. of North America v. Hanjin Shipping Co., 348 F.3d 628

    (7th Cir. 2003)....................................................................................................... 7

Joo Seng Hong Kong Co. Ltd. v. S.S. UNIBULKFIR, 493 F. Supp. 35 (S.D.N.Y. 1980) .......... 8, 9

Matter of Intercontinental Properties Management, 604 F.2d 254 (4th Cir. 1979) ..................... 5, 8

Norfolk Southern Railway Co. v. Kirby, 543 U.S. 14 (2004) ....................................... 10

Otto Wolff Handelsgesellschaft v. Sheridan Transportation Co., 800 F. Supp. 1359 (E.D. Va.

    1992) ............................................................................................................ 4, 8, 12

Sompo Japan Ins. Co. of Am. v. Union Pac. R.R., 456 F.3d 54 (2d Cir. 2006) ............................. 10

Strohmeyer & Arpe Co. v. American Line S.S. Corp., 87 F.2d 360 (2d Cir. 1938)......................... 5

Transatlantic Marine Claims Agency v. M.V. OOCL Inspiration, 137 F.3d 94 (2d Cir. 1998)..... 11

United Nations Children's Fund v. S.S. Nordstern, 251 F.Supp. 833 (S.D.N.Y. 1965)................... 9

Westway Coffee Corp. v. M.V. Netuno, 675 F.2d 30 (2d Cir. 1982)........................................... 11

**Other Authorities**

46 U.S.C. § 1301(a) ........................................................................................................... 7

46 U.S.C. § 1301(b) ........................................................................................................ 5, 7

46 U.S.C. app. § 1301(e).................................................................................................. 10

51 Stat. 233 (1924)............................................................................................................. 7

*Benedict on Admiralty § 224*.............................................................................................. 5

*Benedict on Admiralty § 224(b)(1)* ................................................................................... 8

Fed. R. Civ. P. 12................................................................................................................ 2

Fed. R. Civ. P. 56................................................................................................................ 2

## PRELIMINARY STATEMENT

This Memorandum of Law is submitted in support of Defendant ALPHA SHIP GMBH &

CO KG MS'NEPTUN' (hereinafter, "ALPHA") Motion to Dismiss Plaintiff's Complaint for non-

delivery of a cargo container said to contain bagged coffee pursuant to Fed. R. Civ. P. 12 and, in

the alternative, for Summary Judgment pursuant to Fed. R. Civ. P. 56. It is common ground that

the container was hijacked by armed bandits on the highway between El Salvador and Guatemala

while in the possession of a trucking company hired by co-defendant Compania Sud Americana

de Vapores S.A. ("CSAV"). It is also common ground that the cargo container at issue was never

loaded on board the M/V CMA CGM CORTES ("Vessel").

In its Complaint, Plaintiff makes numerous broad-based allegations that the cargo

container at issue was "…lost and damaged by defendants due to the fault, neglect, deviation,

unseaworthiness, maritime tort, tortious interference with contract, breach of warranty, sinking,

stranding, salvage expenses, general average and conversion of defendants, their agents and

servants, and delivered by defendants in non-conforming and contaminated condition, mis-

delivered and non-delivered." The vast majority of these allegations are not applicable to the

present matter as the cargo was never loaded aboard the Vessel. The remaining unfounded

allegations sound in either breach of contact or in tort.

As will be shown below, none of Plaintiff's allegations of breach of contract or in tort

have merit. No genuine issues of material fact exists which requires trial in this matter as to the

claims asserted by Plaintiff against ALPHA. Moreover, the Southern District of New York is not

2

a convenient forum for the trial of this matter which involves events wholly taking place in South America. Accordingly this matter should be dismissed.

## FACTS

The facts pertaining to this claim are set forth in detail in Defendant ALPHA's Rule 56.1 Statement. A brief synopsis of the relevant facts is as follows:

Defendant ALPHA is the owner of the M/V CMA CGM CORTES, a container ship, which ALPHA chartered to non-party CMA CGM. Defendant CSAV has an arrangement with CMA CGM to use "slots" or space aboard the Vessel to carry cargo on behalf of CSAV's customers. CSAV contracted with Plaintiff ship eight (8) standard 20 foot containers said to contain bagged coffee from Santa Ana, El Salvador to Antwerp, Belgium. CSAV generated bill of lading No. 6HA001847 on a CSAV form for the shipment which was intended to be carried aboard the vessel.

Pursuant to its agreement with Plaintiff to provide transportation of the cargo on a "door to door" basis, CSAV arranged with Terminales Maritimas del Pacifico for the trucking of the eight (8) containers on the inland leg from Santa Ana, El Salvador to Santo Tomas de Castilla, Guatemala, the port where the containers were to be loaded aboard the Vessel for ocean carriage to Antwerp, Belgium. On April 1, 2007, the truck hauling container No. FSCU 3411832 was hijacked and stolen by armed bandits at approximately km 243 of the Atlantic Route Highway. The truck driver was kidnapped and eventually released on April 2, 2007. A police report was filed by the truck driver on April 2, 2007. The following day the cab and empty container and

3

chassis were found abandoned at approximately kilometer 26 of the Atlantic Route Highway.   At no time did ALPHA issue its own bill of lading or authorize the issuance of a bill of lading for container No. FSCU 3411832.   At no time was container No. FSCU 3411832 in the possession of ALPHA, its agents, employees or servants, nor was container No. FSCU 3411832 ever loaded aboard the M/V CMA CGM CORTES.

## LEGAL ARGUMENT

### POINT I

### ALPHA CANNOT BE LIABLE IN CONTRACT<br>FOR THE NON-DELIVERED CONTAINER

ALPHA can not be for non-delivery of the hijacked container under a contract theory as there was no binding contract, express or implied, between ALPHA and Plaintiff.

**A.  No Contract Existed Between Plaintiff and ALPHA.**

The only contracts related to the carriage of the container at issue were: (1) the bill of lading intended to have been issued by CSAV; (2) the Service Agreement between Plaintiff and CSAV; and (3) the agreement between CSAV and CSAV's appointed trucking company, Terminales Maritimas del Pacifico.  ALPHA was not a party to any of these contracts.

"A vessel owner cannot be liable for cargo damage absent a contract of carriage with the claimant." <u>Otto Wolff Handelsgesellschaft v. Sheridan Transportation Co.</u>, 800 F. Supp. 1359

4

(E.D. Va. 1992), *citing*, Matter of Intercontinental Properties Management, 604 F.2d 254, 259 (4th Cir. 1979). A contract of carriage is one covered by a bill of lading or any similar document of title. 46 U.S.C. § 1301(b). Here, ALPHA never issued nor intended to issue a bill of lading. Nor did ALPHA grant any authority to CSAV to issue or sign bills of lading on behalf of the Vessel or ALPHA. ALPHA was not a party to the bill of lading generated and apparently intended to be issued by CSAV.

ALPHA's sole contractual relationship was with CMA CGM, whereby ALPHA agreed to let its Vessel, the M/V CMA CGM CORTES, to CMA CGM for a period of time under a time charter agreement. CMA CGM, hired out space on the ship under a "slot charter party" to CSAV. Under such an arrangement, CSAV acts as the only "carrier" in relation to cargo it books on board the Vessel. See *2A-XX Benedict on Admiralty § 224.*

It is undisputed that the container was hijacked while in the care, custody and control of CSAV's contracted trucking company, prior to being delivered to the Vessel. ALPHA had no involvement or contractual responsibility for transporting the container over land from Santa Ana, El Salvador to the loading port of Santo Tomas de Castilla, Guatemala. Accordingly, it cannot be disputed that ALPHA owed no contractual duty to Plaintiff with respect to the inland carriage of the hijacked container. A vessel owner can only be responsible for loss or damage to cargo when the cargo has been delivered to the vessel. *See* Strohmeyer & Arpe Co. v. American Line S.S. Corp., 87 F.2d 360, 361 (2d Cir. 1938) ("To charge the carrier with liability for the merchandise the [cargo] must actually be delivered to it. The delivery must be complete so that the [vessel]

5

would have full dominion over the cases…[t]he bill of lading…extends only to goods actually received or within the control of the carriers or their representatives.")

Moreover, the trucking company cannot be construed as being an agent, employee or servant of ALPHA. The trucking company's only agreement was with CSAV and CSAV was not given any authority, actual or apparent, to contract on behalf of the Master, the Vessel, or ALPHA for the trucking. Further, ALPHA had no input or duty in any way in respect to the obligations undertaken by CSAV under its service contract with Plaintiff. Accordingly, ALPHA cannot have any liability to cargo for the loss of the cargo prior to it ever reaching the ship.

**B. ALPHA Is Not Bound By The CSAV Bill of Lading.**

**(i) The CSAV bill of lading was not issued and is therefore unenforceable.**

The only bill of lading prepared in respect to the subject cargo was that generated by CSAV on its own bill of lading form. Some courts have found that an un-issued bill of lading that is not signed and executed is not valid and is not enforceable. *See* Eastern Fish Company v. South Pacific Shipping Co., Ltd., 105 F. Supp. 2d 234, 239 (S.D.N.Y. 2000) ("Because it was never signed and executed, the bill of lading is not enforceable.") The evidence shows that the bill of lading generated by CSAV was never signed and executed. Moreover, the CSAV bill of lading expressly defines the "carrier" to be CSAV and CSAV only. Accordingly, the bill of lading covering the shipment for the hijacked container is not enforceable as against ALPHA.

6

**(ii) ALPHA Was Not A "Carrier" Under The CSAV Bill of Lading And Therefore Cannot Be Liable For Non-delivery.**

Even were the Court to conclude that the terms of the CSAV bill are required to by analyzed because it was intended to be issued, there is no basis upon which ALPHA can be liable to Plaintiff under the CSAV bill.

The bill of lading generated by CSAV contains a "Clause Paramount" at Clause No. 2, which calls for the application of the Hague Rules. Federal Courts in the U.S. have applied the U.S. Carriage of Goods by Sea Act at 46 U.S.C. 1301 et seq. when a bill of lading calls for the application of the Hague Rules. *See* Commercial Metals Co. v. M/V LUCKYMAN, 1993 U.S. Dist. LEXIS 17484 at [*6] (E.D. Pa. 1993) ("the General Paramount Clause contained in the Bill of Lading specifically states that the Hague Rules contained in the International Convention apply to the present contract. In the United States the Hague Rules are contained in COGSA"); *see also* Indemnity Insurance Co. of North America v. Hanjin Shipping Co., 348 F.3d 628, 631 (7th Cir. 2003) ("…the waybill provided that it was to be governed by the International Convention for the Unification of Certain Rules of Law Relating to Bills of Lading, concluded in Brussels on August 25, 1924 (commonly known as the Hague Rules), which is generally in force in the United States. See 51 Stat. 233 (1924)).

Under COGSA, liability for cargo loss is imposed only on those charterers and shipowners who meet the definition of "carrier" contained in 46 U.S.C. § 1301(a), that is, those "who enter

7

into a contract of carriage with the shipper." *See* <u>Matter of Intercontinental Properties Management</u>, 604 F.2d 254 (4th Cir. 1979).

Plaintiff has the burden of proving that vessel owner ALPHA is a carrier subject to COGSA. <u>Id.</u> at 258. As stated above, "a vessel owner cannot be liable for cargo damage absent a contract of carriage with the claimant." <u>Otto Wolff Handelsgesellschaft,</u> 800 F. Supp. <u>at 1361</u>. The unsigned, bill of lading was generated by CSAV pursuant to the "slot charter" arrangement between CSAV and CMA CGM without any involvement of ALPHA. Even if the bill of lading was properly issued by CSAV, ALPHA would still not be a carrier as CSAV never had authority to issue or sign bills of lading on behalf of the Vessel's Master or for ALPHA.

As explained in the noted maritime law treatise *Benedict on Admiralty*:

> **The Owner, not having given authorization in the slot charterparty, is not a carrier under COGSA and if sued in contract in personam should be entitled to be removed from the case.** The slot Charterer issuing the bill of lading is not just the Principal Carrier, as it is commonly referred to, but the sole "carrier" for recourse purposes as that term is used in COGSA and the Hague rules.

*2A-XX Benedict on Admiralty § 224(b)(1)* (emphasis added).

Judge Sand's seminal opinion in <u>Joo Seng Hong Kong Co. Ltd. v. S.S. UNIBULKFIR,</u> 493 F. Supp. 35 (S.D.N.Y. 1980) provides further support for the conclusion that ALPHA was not and cannot be a carrier under the CSAV bill of lading. In <u>Joo Seng</u> the Court relied upon agency law principles in analyzing which amongst several parties could have potential liability as a carrier.

8

While any party which issues a bill of lading is generally held to be a carrier under COGSA and may thus be liable to cargo interests, in considering whether a non-bill of lading issuer is a carrier, courts look to a variety of factors to determine the party's actual or intended involvement in the movement of the cargo. Among the items typically looked at are the party's relationship to the vessel, the type of charter arrangement, the language of the bill of lading, and whether the bill was issued with the authority or consent of the party. Joo Seng, 493 F. Supp. at 45-46; United Nations Children's Fund v. S.S. Nordstern, 251 F.Supp. 833 (S.D.N.Y. 1965). Under this traditional approach, ALPHA cannot possibly be considered a carrier of the hijacked container as CSAV clearly issued the bill of lading, on its form, without any authority from ALPHA.

In Joo Seng, Judge Sand also emphasized the importance of the actual contacts that that the owners had with the cargo in placing them within the definition of carrier. This sentiment is reflected in more recent cases where some courts have applied what has been called a "practical approach," where a party may be deemed a carrier under COGSA if the plaintiff shows that the defendant was involved in some way in the issuance of the bill of lading or the loading of cargo and the plaintiff makes a minimal showing that the defendant's actions contributed to the loss of the cargo. Hyundai Corp., U.S.A. v. Hull Ins. Proceeds of The M/V Vulca, 800 F. Supp. 124, 131 (D. NJ 1992). Under this practical approach, it cannot be disputed that ALPHA is not a carrier. ALPHA never had possession of the cargo because it was hijacked before it ever arrived at the loadport. As stated in Commercial Metals, 1993 U.S. Dist. LEXIS 17484 at *14, "The practical

9

approach speaks to letting responsibility for damage and shortage fall on the individuals responsible for the damage or loss." Here, ALPHA has no such responsibility as ALPHA never exercised dominion or control over the cargo.

In addition, the only obligations imposed on a carrier under the Hague Rules and COGSA is from the time cargo is loaded on board a Vessel until the time cargo is discharged from a Vessel (known as "hook-to-hook" or "tackle-to-tackle") unless responsibility is contractually agreed to extend beyond this period. See Sompo Japan Ins. Co. of Am. v. Union Pac. R.R., 456 F.3d 54, 58 (2d Cir. 2006) citing Norfolk Southern Railway Co. v. Kirby, 543 U.S. 14, 29 (2004) ("By its terms, COGSA only applies to 'the period from the time when the goods are loaded on to the time when they are discharged from the ship,' 46 U.S.C. app. § 1301(e), the so-called "tackle-to-tackle" period. But the statute also contemplates that parties will enter into agreements extending COGSA's terms beyond the tackle-to-tackle period…COGSA does not prevent a carrier in its bill of lading from choosing "to extend the [COGSA] default rule to the entire period in which the [cargo] would be under its responsibility, including the period of the inland transport.")

No provision in the bill of lading generated by CSAV extends the Hague Rules or COGSA beyond the tackle-to-tackle period.  As it is unrefuted that cargo container No. FSCU 3411832 was hijacked on the highway between El Salvador and Guatemala while in the custody of CSAV's trucker; i.e., before the cargo was loaded on board the vessel, there is no basis for liability under the CSAV bill of lading.

10

**(iii) Even If ALPHA Was a Carrier Under the CSAV Bill of Lading, Plaintiff Failed to Make a *Prima Facie* Case Under COGSA or the Hague Rules.**

Under COGSA [and the Hague Rules], a shipper who seeks to recover against the carrier for lost goods bears the initial burden of proving both delivery of the goods to the carrier in good condition and outturn by the carrier in damaged condition. *See* Transatlantic Marine Claims Agency v. M.V. OOCL Inspiration, 137 F.3d 94, 98 (2d Cir. 1998); Bally, Inc. v. M.V. Zim America, 22 F.3d 65, 69 (2d Cir. 1994)); Westway Coffee Corp. v. M.V. Netuno, 675 F.2d 30, 32 (2d Cir. 1982). In the present case, Plaintiff cannot make out a prima facie case against ALPHA because even if ALPHA were a carrier, which is denied, the container was never delivered to ALPHA in any condition. *See* Transatlantic, 137 F.3d at 98.

As the Court of Appeals for the Second Circuit has explained, COGSA: (1) clearly evinces an intent to hold carriers prima facially liable for damage to goods . . . but under it, (2) the initial burden of persuasion falls on the plaintiff to make out a *prima facie* case that the goods were, indeed, damaged while in the defendant's care. Id. In this case, ALPHA is entitled to summary judgment because Plaintiff has not satisfied the first prong of its *prima facie* case.[1]

Accordingly, summary judgment should be entered dismissing the breach of contract claim.

---

[1] No evidence has been presented by Plaintiff as to any of the other allegations made in the Complaint. There has been no evidence of any deviation, unseaworthiness, maritime tort, tortious interference with contract, breach of warranty, sinking, stranding, salvage expenses, general average or conversion by ALPHA, its agents, employees or servants. There has been no evidence presented that the cargo container was delivered in non-confirming or contaminated condition or that it has been mis-delivered to another party.

11

## POINT II

## DEFENDANT ALPHA IS NOT LIABLE IN TORT

Just as there is no liability in contract, ALPHA can not possibly be liable to Plaintiff under a negligence or bailment theory for cargo that was never delivered to it.

The trucking company hired by CSAV had care, custody and control of the container on the highway between El Salvador and Guatemala when it was hijacked. The trucking company cannot be considered a representative of ALPHA as it had no contractual relationship with ALPHA, nor could it be considered an agent of ALPHA. Accordingly, ALPHA can not be charged with liability for merchandise never delivered to it.

In addition, ALPHA cannot be considered a common law bailee of the hijacked container. As ALPHA exercised no dominion or control over Plaintiff's cargo, bailment is inapplicable and unsupportable. *See* Commercial Molasses Corp. v. New York Tank Barge Corp., 314 U.S. 104, 110, 86 L. Ed. 89, 62 S. Ct. 156 (1941) (burden of proving a bailment remains upon the plaintiff);

In Otto Wolff, 800 F. Supp. at 1366-67, the court rejected a bailment theory of liability asserted by a cargo claimant against a vessel owner, finding that the vessel owner "obviously had no intent to control the cargo" where the evidence showed that: [1] the parties had no communication with each other, no contract terms were negotiated between them, and no money changed hands between the parties; [2] the cargo claimant did not know who the owner of the

12

vessel was, nor did it know of the existence of a charter party between the vessel owner and a

charterer; and [3] the cargo claimant dealt exclusively with the charterer and paid the appropriate

freight directly to the charterer. The facts here are similar: ALPHA had no communication with

Plaintiff, Plaintiff did not know nor care that ALPHA was the owner of the vessel, and Plaintiff

dealt exclusively with CSAV.

Under the facts here, summary judgment is appropriate and Plaintiff's tort claims should

be dismissed.

## POINT III

### THE FEDERAL DISTRICT COURT IN THE SOUTHERN DISTRICT OF NEW YORK IS *FORUM NON CONVENIENS*

Defendant ALPHA agrees with Defendant CSAV in that the Federal District Court in the

Southern District of New York is not the appropriate forum in this matter. Defendant ALPHA

joins and adopts herein by reference each of the arguments made in Defendant CSAV's motion to

dismiss based on *forum non conveniens* grounds. ALPHA respectfully submits that this case

should be dismissed as New York is an inconvenient forum.

13

NYDOCS1/302617.1

**CONCLUSION**

Ample evidence has been presented to establish that non-delivery of the subject

cargo container was the result of an armed hijacking on the highway between El Salvador and

Guatemala. This evidence is unrefuted by Plaintiff. Plaintiff bears the burden of producing

evidence that such was not the case. In the absence of any such evidence, ALPHA is entitled to

dismissal of this claim as ALPHA had no contractual liability or liability in tort with respect to the

hijacked container. Alternatively, this action should be dismissed on the basis of *forum non*

*conveniens.*


Dated:        New York, New York
              April 11, 2006.


                            FREEHILL,HOGAN & MAHAR, LLP
                            Attorneys for Defendant
                            ALPHA SHIP GMBH & CO KG MS'NEPTUN'

                            By:_____
                                Michael E. Unger (MU 0045)
                                80 Pine Street
                                New York, New York 10005-1759
                                (212) 425-1900


TO:    KINGSLEY, KINGSLEY & CALKINS
       Attorneys for Plaintiff
       91 West Cherry Street
       Hicksville, New York 11801
       Attn: Steven P. Calkins, Esq.
       (516) 931-0064

       MAHONEY & KEANE, LLP

                                        14

NYDOCS1/302617.1

Attorneys for Defendant
CSAV
111 Broadway, 10th Floor
New York, New York 10006
Attn: Edward A. Keane, Esq.
(212) 385-1422
File No.: 43/3451/B/07/8

15

NYDOCS1/302617.1