UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
LOUIS DREYFUS CORPORATION

            Plaintiff,

   -against-

M/V CMA CGM CORTES, her engines,
boilers, tackle, etc., ALPHA SHIPMANAGEMENT
GMBH & CO., KG, ALPHA SHIP GMBH & CO
KG MS 'NEPTUN', COMPANIA SUD AMERICANA
DE VAPORES S.A. (C.S.A.V.)

           Defendants.
------------------------------------------------------------------X

07 Civ. 6622 (WHP)
ECF CASE

PLAINTIFF'S
MEMORANDUM OF
LAW IN OPPOSITION
TO DEFENDANT CSAV'S
MOTION TO DISMISS
FOR *FORUM NON
CONVENIENS*

Preliminary Statement

Defendant CSAV fails to cite the seminal case in the Second Circuit on *forum non conveniens* of Iragorri v. United Technologies Corp., 243 F.3d 678 (2d Cir. 2001), *rehearing en banc*, 274 F.3d 65 (2d Cir. 2001), and omits the three step analysis required to justify dismissal of this maritime case on the grounds of *forum non conveniens.*

First, the Court must apply a presumption in favor of plaintiff's choice of forum, and then must determine if an adequate alternate foreign forum exists. Only then, does the Court apply the private interests and public interest factors as set forth in Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508-9 (1947), to decide if plaintiff's chosen forum is so oppressive and vexatious to the defendant that the plaintiff's chosen forum is inappropriate. Iragorri, *Id.*, 243 F.3d at 680; Piper Aircraft v. Reyno, 454 U.S. 235, 241 (1981); Gross v. British Broadcasting Corp., 386 F.3d 224, 230 (2d Cir. 2004).

Instead, defendant CSAV's Memorandum of Law erroneously launches straight

into an analysis of venue transfer cases under 28 U.S.C. §1406(a), with a series of string citations and out of context quotations concerning transfers to other district courts in the U.S., without discussion of the facts or witnesses in this particular case.

Inherently, a *forum non conveniens*' analysis is fact specific, highly discretionary with the Court, and should rarely be granted except on a strong showing that the chosen forum is inappropriate.  DiRenzo v. Philip Services Corp., 232 F.3d 49, 57 (2d Cir. 2000), *petition for rehearing granted*, 294 F.3d 21, 27 (2d Cir. 2002).

Forum shopping by either plaintiff or defendant is to be discouraged, and the en banc decision of the Second Circuit in Iragorri, discusses in detail the degree of deference accorded to the plaintiff's choice of forum.  Here, the facts and plaintiff's choice of forum in New York dictate that the Southern District of New York is the only appropriate forum for resolution of this maritime cargo claim.

<u>Argument</u>

POINT I:   GREAT DEFERENCE SHOULD BE ACCORDED THIS U.S. BASED PLAINTIFF'S CHOICE OF FORUM IN NEW YORK

Several valid reasons exist for plaintiff's selection of the Southern District of New York as the forum to adjudicate its rights in this maritime cargo claim for non-delivery of container no. FSCU3411832.  First, the Declaration of David Marker in Opposition to the Motion sets forth in detail the close connection of New York and Connecticut to the

facts of the purchase and sale of the coffee, the negotiations with CSAV to set the applicable freight rates, and the handling of the claim through the insurance broker in New York, where the cargo underwriter also has its office.

Second, defendant CSAV's General Agent in the United States is located in Iselin, NJ, approximately 25 miles from the Southern District Courthouse. (See, Exhibit 8).

> "The more it appears that a domestic or foreign plaintiff's choice of forum has been dictated by reasons that the law recognizes as valid, the greater the deference that will be given to the plaintiff's forum choice. Stated differently, the greater the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States, the more difficult it will be for the defendant to gain dismissal for *forum non conveniens*."
> Iragorri, *Id.* 274 F.3d at 71-2.

Three states would appear to have a strong connection to the facts of this case. Connecticut, where Louis Dreyfus Coffee Division and David Marker are located, New Jersey, where CSAV is present through its General Agent in the United States, and New York, where payment for purchase of the coffee was made, where the contract with CSAV for the freight rates was made, and where the cargo insurance broker and cargo underwriter are located.

> "In many circumstances, it will be far more convenient for a U.S. resident plaintiff to sue in a U.S. court than in a foreign country, even though it is not the district in which the plaintiff resides. It is not a correct understanding of the rule to accord deference only when the suit is brought in the plaintiff's home district. Rather, the court must consider a plaintiff's likely motivations in light of all the relevant indications."
> Iragorri, *Id.* 274 F.3d at 73.

Moreover, even though the Service Contract No. US-CHIW-05-0658-C0190US between CSAV and Louis Dreyfus did not govern this particular shipment of goods to Antwerp, it remains strong evidence of the convenience of New York City to the parties to conduct their affairs, and specifically to the U.S. District Court for the Southern District of New York as the forum to enforce their legal rights in connection with the Louis Dreyfus international coffee shipments from Latin America.  (See, Clause 11 to Service Contract, Attachment A to CSAV's Response to Plaintiff's Combined Discovery Demand, Exhibit D to the Wolfson Declaration in Support).

This is not a case of forum shopping by the plaintiff.  Rather, it is defendant who is forum shopping by attempting to have this case dismissed, and relegate plaintiff to an unknown legal system in Guatemala, not for any convenience of witnesses, but solely to chill plaintiff from pursuing its modest claim for non-delivery of one container of coffee carried under CSAV's through bill of lading no. 6HA001847.  (Exhibit 7).

> "Courts should be mindful that, just as plaintiffs sometimes choose a forum for forum-shopping reasons, defendants also may move for dismissal under the doctrine of *forum non conveniens* not because of genuine concern with convenience but because of similar forum-shopping reasons.  District courts should therefore arm themselves with an appropriate degree of skepticism in assessing whether the defendant has demonstrated genuine inconvenience and a clear preferability of the foreign forum.  And the greater degree to which the plaintiff has chosen a forum where the defendant's witnesses and evidence are to be found, the harder it should be for the defendant to demonstrate inconvenience."
> Iragorri, *Id.* 274 F.3d at 75.

In reversing a dismissal on *forum non conveniens* grounds in, Gross v. British

Broadcasting Corp., *Id.*, the Second Circuit stressed the very great deference given to a U.S. plaintiff suing in her own home forum where the defendant was amenable to process, quite parallel to what Louis Dreyfus has done in this case.

> "Nothing in our sliding scale approach calls into question the very strong deference traditionally given a U.S. plaintiff suing in her home forum. Importantly, the district court did not mention anything to suggest that appellant chose the forum for illegitimate reasons, nor do we find such evidence in the record. This case therefore presents a situation in which courts should initially be at their most deferential: a U.S. plaintiff suing at home for valid reasons." *Id.* at 231.

## POINT II: GUATEMALA IS NOT AN ADEQUATE ALTERNATE FORUM FOR THE ADJUDICATION OF PLAINTIFF'S CLAIMS

Defendant CSAV has not meet its threshold burden to establish that the courts of Guatemala are an adequate alternate forum for the adjudication of plaintiff's claim. Wiwa v. Royal Dutch Petroleum, 226 F.3d 88 (2d Cir. 2000).

> "The defendant has the burden to establish that an adequate alternative forum exists and then to show that the pertinent factors 'tilt strongly in favor of trial in the foreign forum.'" *Id.* at 100.

Defendants offer nothing in their moving papers about the courts in Guatemala, the rights of the parties under Guatemalan law, or even what Guatemalan laws, if any, would be applied to plaintiff's claim or even to CSAV's purported indemnity claim. See, Kreta Shipping, Limitation Proceeding, M/V Amphion, 1998 AMC 1621, *report and recommendation affirmed*, 1998 AMC 1630, 1638 (SDNY 1998)(". . . COMBAC has no claim for indemnity against Kreta under either the law of Germany or the law of Belgium.")

Moreover, CSAV mistakenly claims the through bill of lading was issued in Guatemala when a simple glance at the foot of the subject bill of lading, Exhibit 7 to Marker's Declaration, shows it was issued in Santa Ana, El Salvador, not Guatemala. (See, page 9 of CSAV Memorandum of Law)

Thus, we are left wondering whether Guatemalan law would even enforce rights and liabilities under a through bill of lading issued in El Salvador.

CSAV's counsel further obfuscates the issue of an adequate alternate foreign forum by suggesting, "as well as, perhaps, nearby El Salvador," at paragraph 5 of the Wolfson Declaration in Support.  Indeed, counsel does not seem to know where he wants to send this case in order to assert the purported claim over against the trucker. In paragraph 4 of the Wolfson Declaration in Support the trucker is located in Guatemala, but the last attachment to CSAV's Response to the Combined Discovery Demands shows an address for the trucker in San Salvador, El Salvador.  (Exhibit D)

Accordingly, defendant CSAV has failed to carry its threshold burden to establish that an adequate alternate foreign forum exists, and the motion to dismiss for *forum non conveniens* must be denied.  See, Peregrine Myanmar Ltd. v. Segal, 89 F.3d 41, 46 (2d Cir. 1996); see also, Calavo Growers of Calif. v. Generali Belgium, 632 F.2d 963, 968 (2d Cir. 1980)(*forum non conveniens* "presupposes that an alternate forum is available.")

POINT III:    THE PRIVATE AND PUBLIC INTEREST FACTORS IN THIS CASE DO NOT OVERCOME THE STRONG DEFERENCE GIVEN TO PLAINTIFF'S CHOICE OF FORUM IN NEW YORK

Balancing the private and public interest factors is the third and final step in a *forum non conveniens* analysis. Gross v. British Broadcasting Corp., *Id.* at 230.

"As enumerated in *Gilbert*, the private interest factors include

relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

330 U.S. at 508, 67 S.Ct 839." *Id.* at 232.

A.    Private Interest Factors:

1.    Access to sources of proof

All of plaintiff's evidence as to the purchase and payment for the coffee, the Shipping Instructions, the setting of the freight rates for transporting the coffee to Antwerp, the freight payment made to CSAV's collection agent for the non-delivered container, the handling of the non-delivery claim, submission of that claim to the insurance broker, and the payment to CSAV under the open marine cargo policy by the cargo underwriter, Great American Ins. Co., Marine Division, are located either in Connecticut or New York. All of plaintiff's supporting claim documents are similarly located in Connecticut or New York. Mr. David Marker, Logistics Manager of Louis

Dreyfus, and plaintiff's most knowledgeable witness of this case is located in Wilton, Connecticut.

Defendant CSAV's General Agent is 25 miles from the Southern District Courthouse in Iselin, NJ, and has control, if not actual custody, of all the shipping documents associated with this shipment. Whatever documents the General Agent of CSAV does not have can easily be sent to New York with its three international airports, provided the documents cannot more easily be electronically transmitted directly. Mr. Joseph R. Tagliareni, Director of Risk Management for CSAV, who verified the Responses to Plaintiff's Interrogatories, is located in Iselin, NJ where the verification was signed.

All of the missing documents that defendant CSAV failed to produce in response to Plaintiff's Combined Discovery Demands, as set forth in paragraph 5 of the Calkins Declaration in Opposition, appear to have been selectively omitted without justification, objected to as generated after "receiving notice of plaintiff's claim and retaining counsel," or still being searched for at the time the Response was made and never supplemented. The only records CSAV contends it does not have possession or control of are "the trucker's records." (Response to Interrogatory #6, Exhibit D to Wolfson Declaration in Support).

Nonetheless, that is no excuse not to produce CSAV's own copies of the records requested in #1, 2, 8, 11, 12, 14, 15, 16, 17, and 18 of the document request portion of the Plaintiff's Combined Discovery Demands. (See paragraph 5 of the Calkins Declaration

in Opposition). Certainly, CSAV has not contended in its moving papers that the location of these documents support its motion to dismiss on *forum non conveniens* grounds, and at the very least, defendant CSAV must now be precluded from relying upon its own discovery failures and omissions to support its motion to dismiss.

Defendant CSAV was given the chance to identify its purported witnesses in a foreign jurisdiction with relevant knowledge, such as the name and address of the individual trucker who transported container no. FSCU3411832 from El Salvador, as requested in Interrogatory no. 3, and the name and address of the individuals providing security for the shipment in Interrogatory no. 7, but instead responded with "See supra § 1" where defendant objects to the scope of the Interrogatories under Local Civil Rule 33.3. (Exhibit D to Wolfson Declaration in Support).

Furthermore, borrowing from the venue transfer cases under 28 U.S.C. §1404(a) for the private interest factors, defendant CSAV fails to provide a detailed factual statement of the purported foreign witnesses' expected testimony. As held in, Laumann Mfg. Corp. v. Castings USA Inc., 913 F. Supp. 712, 720 (EDNY 1996), the movant must support a transfer motion with an affidavit containing "detailed factual statements" explaining why the transferee forum is more convenient, including, "the potential principal witnesses expected to be called and a general statement of the substance of their testimony." *Id.* at 720.

It is obvious from defendant's moving papers that CSAV's counsel has never spoken to, investigated, or verified the version of events in Guatemala or El Salvador

through actual witnesses. Therefore, defendant CSAV cannot justify dismissal where it presents no admissible evidence that, "the balance of convenience tilts strongly in favor of trial in the foreign forum." R. Manganlal & Co. v. M.G. Chem. Co., 942 F.2d 164, 167 (2d Cir. 1991).

2.    Availability of compulsory process and cost

The only "unwilling" witnesses in this case are the CSAV witnesses, because CSAV's counsel refused to comply with plaintiff's valid Notice of Deposition under Rule 30(b)(6). (Exhibit 10) The false pretense CSAV's counsel used to avoid its discovery obligations is set forth in the letter to plaintiff's counsel dated November 20, 2007. (Exhibit 11)

However, CSAV's counsel misstates the law in its letter. Rule 30(b)(1) is clear that a "notice shall state the time and place for taking the deposition," and the only procedure available to raise defendant's objection to location is a motion for a protective order.

> " Trial courts have discretion to deny motions for a protective order after considering the cost, convenience and efficiency of conducting depositions at the defendant's principal place of business rather than the district of the litigation." Silva Run Worldwide Ltd. v. Gaming Lottery Corp., 2003 WL 23009989 (SDNY 2003).

Defendant CSAV has never availed itself of a protective order, and its verifying witness with knowledge from the General Agent's office in Iselin, NJ, Mr. Tagliareni, is amenable to process from the Southern District of New York.

The balancing of the costs, convenience and efficiency of sending the willing witnesses from both plaintiff and defendant to New York City for deposition or trial, instead of to somewhere in Central America, cannot be seriously argued.

3. View of the premises, if appropriate

The circumstances of the loss of container no. FSCU34118832 is alleged to be a robbery in Guatemala, but plaintiff does not concede this point. The purported hearsay evidence in inadmissible form under Rule 903(2), F.R.E., in defendant's Exhibit D is uncorroborated by any knowledgeable fact witnesses.

By its refusal to produce its contracts, directives, and/or agreements with the inland trucking company, or disclose the security arrangements for the inland movement of the coffee containers, or the security vetting of the trucker (Exhibit 9, Document Requests #14, 15, 16, and 17, and Interrogatories #1, 3, 6, 7, and 8), defendant CSAV cannot seriously maintain any due diligence defense nor show that Guatemala is more convenient to unidentified witnesses. (See, page 8 of the CSAV Memorandum of Law).

Indeed, stealing coffee in Guatemala is akin to "carrying coals to Newcastle."

B. Public Interest Factors:

The *Gilbert* public interest factors include: 1) the administrative difficulties associated with court congestion; 2) the unfairness of imposing jury duty on a community with no relation to the litigation; 3) the local interest in having localized

controversies decided at home; and 4) the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law. *Id.*, 330 U.S. at 508-9.

1. Administrative difficulties with court congestion

Plaintiff understands that the Southern District Court of New York is a busy commercial and criminal federal court, but it is also the preeminent admiralty court in the country. As this is a simple maritime cargo non-delivery claim arising under a through intermodal bill of lading issued by CSAV, an ocean common carrier, no particular administrative difficulties in this Honorable Court can be discerned.

2. Jury duty

None, as this is a non-jury maritime case.

3. Local interest in localized controversies

Plaintiff transacts substantial business in New York and in this Circuit, and has a keen interest in having the Southern District Court of New York and the Second Circuit Court of Appeals adjudicate its commercial rights and liabilities. (See, Clause 11, Attachment A, Exhibit D of Wolfson Declaration in Support).

4. Applicable law and conflict problems

Defendant CSAV provided the backside terms and conditions of carriage to its bill of lading form issued for the carriage of plaintiff's cargo of coffee. (See, Exhibit D to Wolfson Declaration in Support; and Exhibit 7 to Marker's Declaration in Opposition).

Three clauses appear relevant. First, is the Clause Paramount (#2) which provides in relevant part, as follows:

> "(1) Save where the English Carriage of Goods by Sea Act 1971 applies the Hague Visby Rules compulsorily to this Bill of Lading, in which event this Bill of Lading shall be subject to the Hague Visby Rules, the Hague Rules shall apply and the Carrier shall be entitled to the benefit of all privileges, rights and immunities contained in Articles I to VIII of the Hague Rules, save that notwithstanding the provisions of Article III Rule 8 of the Hague Rules, the limitation sum for the purpose of Article IV Rule 5 of the Hague Rules shall be £100 pounds sterling."

Second, is the "Carrier's Responsibility: Intemodal Shipments: Tariffs: -" Clause (#10) which provides in relevant part, as follows:

> "Save as otherwise indicated on the face hereof, where Carriage under this Bill of Lading is for intermodal transport, the Carrier undertakes responsibility for the entire (intermodal) transportation of the Goods from the Place of Receipt or the Port of Loading (whichever is applicable) to the Port of Discharge or Place of Final Delivery (whichever is applicable) but the Carrier shall have the right to use the services of other Precarriers and/or Oncarriers and any mode of transport to accomplish the same.
>
> Custody and Carriage of the Goods during the intermodal transportation are subject to the tariffs and terms of the relevant bills of lading and/or contract of carriage and/or other transport documents adopted by the Precarrier and/or Oncarrier and prescribed or made compulsorily applicable by the country in which the intermodal transportation is performed, copies of which are available from the Carrier on request . . ."

As this Court is well aware, the U.S. Carriage of Goods by Sea Act, 46 U.S.C. §30701 historical and statutory notes, formerly at §1300 et seq., is the U.S. version of the Hague Rules, and presents no difficulty for this Court to interpret. See, Stemcor U.S.A., Inc. v. M/V Archimedes, 2004 U.S. Dist. LEXIS 25236, *8, *9, 2004 AMC 1651, 1654 (SDNY 2004). To the extent defendant CSAV intends to argue that the laws of

Guatemala or El Salvador may apply to this loss, CSAV has not articulated nor disclosed what such foreign laws may provide, nor have they filed a Notice pursuant to Rule 44.1, F.R.Civ.P.

Moreover, even if such local foreign laws were disclosed by defendant, Clause #2 and Clause #10 contain ambiguities that must be strictly construed against the carrier.

> "Our analysis begins with the bill of lading, the document evidencing the contract of carriage. *David Crystal*, 339 F.2d at 297. We bear in mind that bills of lading are contracts of adhesion and, as such, are strictly construed against the carrier." Allied Chemical v. Companhia de Navegacao  775 F.2d 476, 482, 1986 AMC 826, 831-2 (2d Cir. 1985) *cert. denied*, 475 U.S. 1099 (1986).

To wit:  Clause #2 provides for application of the Hague Rules to the bill of lading and Clause #10 provides that the carrier undertakes responsibility under an intermodal bill of lading for the entire intermodal transportation of the goods.  And, since Clause #2 is "Paramount," it takes precedence over the conflicting local law provision of Clause #10.  See, Asoma Corp. v. M/V Seadaniel, 971 F. Supp. 140, 143 (SDNY 1997); Hague Rules, Article III Rule 8 [COGSA §1303(8)]("Any clause, covenant or agreement in a contract of carriage relieving the carrier . . . from liability . . . or lessening such liability . . . shall be null and void . . .").

The third relevant clause of CSAV's bill of lading form is the "Law and Jurisdiction" clause (#23), which provides in relevant part, as follows:

> " . . .  If notwithstanding the foregoing, any proceedings are commenced in another jurisdiction, such proceedings shall be referred to ordinary courts of law. . . ."

This is obviously a permissive forum selection clause, and defendant CSAV's footnoted argument at pages 8-9 of its Memorandum of Law is off the mark.

Thus, this Court should have no difficulty applying the Hague Rules as substantive law to this dispute, and the procedural rules, legal presumptions, burdens of proof, and rules of contract construction can easily be applied as *lex fori* to this maritime cargo non-delivery case.

## CONCLUSION

Defendant CSAV's motion to dismiss for *forum non conveniens* must be denied, as plaintiff's choice of this forum for valid legal reasons is entitled to great deference, defendant has not established that an alternate foreign forum exists, and none of the private and public factors of *Gilbert* weigh in favor of dismissal for *forum non conveniens*; and that the Court grant plaintiff such other, further and different relief, as the Court deems just and proper.

Dated:      April 25, 2008

Respectfully Submitted,

KINGSLEY, KINGSLEY & CALKINS
Attorneys for Plaintiff


BY: _____
Steven P. Calkins
91 West Cherry Street
Hicksville, N.Y. 11801
(516) 931-0064