```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
LOUIS DREYFUS CORPORATION,                    07 CV 6622 (WHP)

                            Plaintiff,

        -against-


M/V CMA CGM CORTES, her engines,
boilers, tackle, etc., ALPHA
SHIPMANAGEMENT GMBH & CO., KG, ALPHA
SHIP GMBH & CO. KG MS "NEPTUN",
COMPANIA SUD AMERICANA DE VAPORES S.A.
(C.S.A.V.),

                            Defendants.
-----------------------------------------X
```

REPLY MEMORANDUM OF LAW
IN SUPPORT OF MOTION

Garth S. Wolfson (GW 7700)

    Of Counsel

MAHONEY & KEANE, LLP
Attorneys for Defendant
COMPANIA SUD AMERICANA DE VAPORES S.A.
111 Broadway, Tenth Floor
New York, New York 10006
(212) 385-1422

TABLE OF CONTENTS

*Page*

REPLY ARGUMENT..................................................1

    POINT I.    PLAINTIFF'S CHOICE OF FORUM DOES NOT WARRANT GREAT DEFERENCE IN THIS CASE........1

    POINT II.    GUATEMALA AND EL SALVADOR ARE READILY APPARENT ALTERNATE FORA FOR THIS LAWSUIT....................................2

    POINT III.    THE PRIVATE AND PUBLIC INTEREST FACTORS OVERWHELMINGLY FAVOR THE FORUM NON CONVENIENS DISMISSAL........................3

    POINT IV.    THE DISCOVERY ISSUES RAISED BY PLAINTIFF ARE INAPPROPRAITE, MISPLACED, AND IRRELEVANT..................................7

CONCLUSION....................................................11

REPLY ARGUMENT

POINT I.    PLAINTIFF'S CHOICE OF FORUM DOES NOT WARRANT GREAT DEFERENCE IN THIS CASE.

"The fact that plaintiffs are aliens independently undercuts the weight to be given their choice of this forum." Ionnides v. Marika Maritime Corp., 928 F. Supp. 374, 378, 1997 A.M.C. 989, 994 (S.D.N.Y. 1996); Damigos v. Flanders Compania Naviera, S.A., 716 F. Supp. 104, 107, 1990 A.M.C. 656, 659-60 (S.D.N.Y. 1990); see also, Carta Cartoni v. M.V. Costa Atlantica, 1987 A.M.C 2659, 2661 (S.D.N.Y. 1986) ("In the present case, the plaintiff has brought suit in New York, which is not its home forum [but in which an office was maintained]. . . Therefore, little weight need be given to plaintiff's selection of the Southern District of New York as its forum.").

And, again, the deference otherwise afforded plaintiff's choice of forum is also diminished where no meaningful nexus between the operative facts and plaintiff's chosen forum can be shown. See, Transmundo Co. v. S.S. Delta Mar, No. 83 Civ. 2801, 1983 A.M.C. 2572 (S.D.N.Y. Jun. 28, 1983) ("Although a plaintiff's choice of [its home] forum ordinarily is entitled to significant weight, the deference accorded that factor is lessened where the operative facts in the case have no material connection with the district in which plaintiff filed the complaint."); accord, Carta Cartoni Cellulosa, S.P.A. v. M.V. Costa Atlantica, No. 84 Civ. 8673 (JFK), 1987 A.M.C 2659,  2661-62 (S.D.N.Y. Mar. 14, 1986);

see also, M/V Paschalis, 1988 A.M.C. at 1024-25.

The plaintiff multinational corporation concedes its closest place of business is outside of this district and outside of this State. And there appears to be no meaningful dispute that an overseas hijacking occurred here, and the shipment did not even contemplate transit to or through any United States ports anyway. The Court should thus give little, if any, weight to plaintiff's choice of forum under these circumstances. See, Chubb Ins. Co. v. M/V Humboldt Express, No. 02 Civ. 1294 (GBD), 2003 U.S. Dist. LEXIS 19085, *6 (S.D.N.Y. Oct. 24, 2003) ("Since plaintiff's are foreign companies and the acts giving rise to the action have no relation to this district, plaintiffs' choice of forum is entitled to a minimal amount of deference.").

**POINT II.    GUATEMALA AND EL SALVADOR ARE READILY APPARENT ALTERNATE FORA FOR THIS LAWSUIT.**

Plaintiff suggests that CSAV's motion should be denied because CSAV has not proven that Guatemalan or El Salvadoran courts will provide relief on plaintiff's claims. But, as the goods were hijacked during trucking through both fora, either would plainly have jurisdiction over the matter. There is no reason to just assume plaintiff's claim can not be heard in the courts of other countries. And there is no basis in law, and no precedent cited, for extending a defendant's burden to include affirmatively demonstrating that plaintiff's claim will be assured of success in the foreign litigation. Plaintiff cites only Kreta

Shipping v. M/V Amphion, 1998 A.M.C. 1630, 1638 (S.D.N.Y. 1998), which did not involve a forum motion at all, and where the parties agreed that one of the claims had no merit under the foreign law being considered; it imposed no such rule.  Id.  Plaintiff dismisses CSAV's "string citations," without addressing them. None of those "string-cited" cases, or any other CSAV is aware of, have placed such impossible standards in the way of venue motions. There is ample case law on this subject; CSAV's legal position well-settled, and plaintiff's is unfounded.

**POINT III.        THE PRIVATE AND PUBLIC INTEREST FACTORS OVERWHELMINGLY FAVOR THE FORUM NON CONVENIENS DISMISSAL.**

Plaintiff has provided a declaration from a witness averring that plaintiff's Wilton, Connecticut office was involved in "the purchase and sale of the coffee, the negotiations with CSAV to set the applicable freight rates, and the handling of the claim through the insurance broker in New York."  Plaintiff has also pointed out that CSAV uses an agency in New Jersey (as it does all over the world).  That is the sum total, the best plaintiff can set forth, of this case's contacts with this Country, let alone this District.

However, CSAV is unaware of any dispute concerning the purchase and sale of the coffee, the negotiations with CSAV to set the applicable freight rates, and the handling of the claim through the insurance broker in New York.  This is a case for

cargo damage. That cargo damage occurred in Central America. The driver and the police investigators are the witnesses that matter. No one can, or does, seriously dispute that the issues to be tried will concern the foreseeability of the criminal act and the precautions taken on the part of the trucker. And no one at a desk in the Wilton, Connecticut office of plaintiff or the Iselin, New Jersey office of CSAV's agent has any personal knowledge of the material events.

Perhaps most ironically, plaintiff asserts that CSAV's inability to gather more information about the hijacking and the trucker's procedures should somehow give rise to an inference that the case belongs in the Southern District of New York. The very reason CSAV can't gather more information, is because the events in question took place in Guatemala and/or El Salvador and CSAV has no control over the trucker's documents and witnesses. That is also one of the very reasons admiralty courts have not hesitated to enter forum non conveniens dismissals.

Nonetheless, the police reports identify two eye witnesses, Jose Ramirez Flores and Maurico Alfonso Call Rosales, as well three police witnesses. (Exhibit D to Wolfson Declaration). CSAV has also identified Terminales Maritima del Pacifico as the party which undertook the trucking. Id. All reside near the situs of the occurrence. Id. It is thus difficult to fathom what more should be fairly expected of CSAV to support this application.

4

And, unless an elaborate fraud is being perpetrated upon the Court, it would strain credulity to imagine any possible additional information which might come to light and result in a quantum shift of the locus of the facts, witnesses, and proof from Central America to New York City.

As for the public interest factors, CSAV has already provided the Court with ample case law demonstrating the public interest in avoiding congestion and burdening United States courts with controversies that belong elsewhere. Plaintiff also concedes that foreign law would apply, but suggests that a United States court is somehow better able to interpret it than other courts. But, of course, there is no reason to believe United States judges have more inherent competence in this regard than judges elsewhere. See, generally, M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15, 92 S. Ct. 1907, 32 L.Ed.2d 728, 1972 A.M.C. 1407 (1972) (discussing "[t]he parochial concept that all disputes must be resolved under our laws and in our courts");

Moreover, plaintiff's suggestion that the Hague Rules are the same as COGSA is wrong. "[T]he Hamburg Rules do differ in material respects from the Hague Rules." Caterpillar, Inc. v. M/V Karonga, No. 06 Civ. 8236 (NRB), 2008 U.S. Dist. LEXIS 33428, **28-28 (S.D.N.Y. Apr. 23, 2008) (compiling cases).

And plaintiff's position that the Hague Rules apply by virtue of the bill of lading is also misplaced. The bill of lading was

never even issued. See, Eastern Fish Co. v. South Pac. Shipping Co., 105 F. Supp. 2d 234 (S.D.N.Y. 2000) ("Because it was never signed and executed, the bill of lading is not enforceable."); Raphaely Int'l, Inc. v. Waterman S.S. Corp., 764 F. Supp. 47, 49 n.4 (S.D.N.Y. 1991) ("[T]he 'newly discovered' bills offered by Mr. Smith are unsigned, undated and unstamped making them non-negotiable."), amended on other grounds, 1991 U.S. Dist. LEXIS 18200, *13, 1992 A.M.C. 830 (S.D.N.Y. Dec. 17, 1991) ("I previously rejected the bills of lading offered by Waterman on the parties' motions for summary judgment and I now again reject them for the same reasons."); aff'd, 972 F.2d 498 (2d Cir. 1992), cert. denied, 507 U.S. 916, 113 S. Ct. 1271, 122 L. Ed. 2d 666 (1993); M. Davies, In Defense of Unpopular Virtues: Personification and Ratification, 75 Tul. L. Rev. 337, 410 n.190 (December 2000) ("In this context, it is important to distinguish between the process of issuing bills of lading and that of preparing bills of lading for signature (commonly known as 'cutting' bills).[1]

---

[1] Were it to apply, the bill of lading's Law and Jurisdiction Clause provides that "[t]his Bill of Lading and any claim or dispute arising hereunder shall be subject to English law and the jurisdiction of the English High Court of Justice in London. If, notwithstanding the foregoing, any proceedings are commenced in another jurisdiction, such proceedings shall be referred to ordinary courts of law. In the case of Chile, arbitrators shall not be competent to deal with any such disputes and any proceedings shall be referred to the Chilean Ordinary Courts." (Bill of Lading Terms, Exhibit D to Wolfson Declaration, at ¶ 23). Plaintiff's argument, that this somehow amounts to a waiver of all venue arguments no matter where CSAV might be sued, is not worthy of the Court's consideration. The clause is simply permissive, with no preclusive effect. See, generally, See, Hartford Fire

And even by its own terms, the Hague Rules, like COGSA, only apply to the tackle-to-tackle period, and the unissued bill of lading does not extend to periods before loading. <u>See</u>, Article 1(e) of the Hague Rules ("Carriage of Goods" covers the period from the time when the goods are loaded on to the time they are discharged from the ship."), W. Tetley, <u>Marine Cargo Claims</u>, at Appendix A (Blais 1988).

In all likelihood, therefore, Guatemalan or El Salvadoran law will apply, and courts in those countries are <u>per se</u> best qualified to construe it. Again, plaintiff's arguments are just without merit.

**POINT IV.        THE DISCOVERY ISSUES RAISED BY PLAINTIFF ARE INAPPROPRAITE, MISPLACED, AND IRRELEVANT.**

Falling upon the "last refuge" of parties lacking a good faith argument on the merits, plaintiff attacks virtually every aspect of CSAV's discovery responses, arguing that the foreign venue's connection to the events and proof in this case has not

---

<u>Ins. Co. v. Novocargo USA Inc.</u>, 156 F. Supp. 2d 372, 2002 A.M.C. 319 (S.D.N.Y. 2002) (citing <u>John Boutari & Son Wines & Spirits, S.A. v. Attiki Importers & Distrib's Inc.</u>, 22 F.3d 51, 52 (2d Cir. 1994) ("when only jurisdiction is specified the clause will generally not be enforced without some further language indicating the parties' intent to make jurisdiction exclusive"); <u>City of New York v. Pullman, Inc.</u>, 477 F. Supp. 438, 442 n.11 (S.D.N.Y. 1979) ("An agreement conferring jurisdiction in one forum will not be interpreted as excluding jurisdiction elsewhere unless it contains specific language of exclusion.")). Were it to apply, the CSAV bill of lading might prohibit arbitration and provide for another available alternate forum, <u>i.e.</u> English courts, but it would certainly not vest this Court with exclusive jurisdiction.

7

yet been shown.

However, it should first be noted that plaintiff never raised these purported discovery failures with CSAV or the Court before now. This conduct violates the Court's Rules requiring counsel to raise discovery disputes with the Court before seeking to exploit them in the context of motion practice. Coming by ambush at this time, and in contradiction to the Court's express rules, plaintiff's discovery argument can only be viewed as pretextual and should be disregarded by the Court accordingly.

Indeed, the suggestion that the fact of the hijacking remains to be established is just disingenuous. Plaintiff has not offered any factual basis to dispute the information produced under oath in this regard, including the official translations of the police reports. The vessel owners also confirmed that this cargo never made it to the ship. No amount of discovery in the world is going to change this basic reality, which plaintiff asks the Court to ignore.

Plaintiff takes issue with the scope of CSAV's document disclosures for not including the charter party with the vessel owners. But, as the vessel owners have submitted in connection with their own motion on the same grounds, CSAV had no such charter. Nor would vessel documents have any bearing on this dispute, since there is no question that the vessel was uninvolved in the ocean transport of cargo which never arrived at the pier.

8

As discussed above, without obtaining jurisdiction over the responsible parties and witnesses with first-hand knowledge, CSAV has provided all it can gather. The Court and the parties certainly have enough information to know that the cargo was hijacked en route to the port. The trucker has been identified, and the witnesses have been named. All that remains so as to warrant the <u>forum non conveniens</u> dismissal is for the truth to be accepted.

Moreover, on January 18, 2008, the parties appeared for the pre-motion conference in connection with this application. It was at that time that plaintiff first requested discovery with respect to the forum,[2] and, in the Court's Scheduling Order dated January 22, 2008, discovery on the issue was allowed to proceed until March 31, 2008. (Order dated January 22, 2008, Docket Entry No. 14). No mention was made of any outstanding deposition,[3] and no

---

[2] It should be further noted that plaintiff itself has not even provided any Rule 26 disclosures, let alone been asked to produce a witness for deposition or answer interrogatories.

[3] Plaintiff defectively noticed all defendants' depositions more than two months before the pre-motion conference, and CSAV timely objected.

> A practice has grown up in this area wherein counsel for plaintiff-libellant wishes to take the discovery deposition of the "master, mate and officers" of a certain vessel and they cause a notice to be served upon opposing counsel returnable at a fixed date at the office of such counsel, even though they are aware of the fact that no witness will be present. Such notices are meaningless; they establish no priority as to

9

depositions were ordered. <u>Id.</u> Nor did the Court specifically order CSAV to answer interrogatories at all, let alone interrogatories plainly exceeding the scope of Rule 33.3. <u>Id.</u>; Local Rule 33.3. Yet, while preserving its objections, CSAV did answer each and every interrogatory over objection (plaintiff's suggestion that CSAV objected without answering is not true). Plaintiff also complains that CSAV in some instances merely referred to attached business records. But that was an option expressly given to CSAV via Rule 33(d) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 33(d). And, again, no dispute was heard by plaintiff on these matter until now, after the expiry of the Court's deadline and in violation of the Court's Rules of Practice.

It is clear that no amount of discovery will ever be enough to convince the plaintiff to admit the fundamental lack of connection of this case to this district. However, the

---

> discovery proceedings and, at best, may entitle counsel to take the discovery deposition in advance of a de bene esse deposition of one of these officers. Even the latter practice should not be looked upon with favor as it involves a needless expense.

<u>Nagle v. United States Lines Co.</u>, 242 F. Supp. 800, 801, 1965 A.M.C. 2153 (E.D. Va. 1965). Plaintiff never followed up for the deposition of CSAV's agent in New Jersey (CSAV itself is located in Valparaiso, Chile). And that agent has since submitted a declaration averring that CSAV had no knowledge of the particulars of the hijacking beyond the information contained in the documents which have been produced. Nor did plaintiff question CSAV's response to the notice of deposition until opposing the instant motion.

information material to this motion is before the Court, regardless of whether plaintiff chooses to acknowledge it. And plaintiff's <u>ex post facto</u> attempt to forensically manufacture discovery disputes at this juncture represents nothing more than an obvious canard.

**CONCLUSION.**

WHEREFORE, CSAV urges the Court to grant the instant motion for an order, pursuant to Rule 12 of the Federal Rules of Civil Procedure, dismissing the action on <u>forum non conveniens</u> grounds and granting to CSAV such other and further relief as this Honorable Court may deem just and proper.

Dated: New York, New York
       May 1, 2008

>                    Respectfully submitted,
>
>                    MAHONEY & KEANE, LLP
>                    Attorneys for Defendant
>                    COMPANIA SUD AMERICANA DE
>                    VAPORES S.A.
>
>                By: _____
>                    Garth S. Wolfson (GW 7700)
>                    111 Broadway, Tenth Floor
>                    New York, New York 10006
>                    (212) 385-1422

11